UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ENDLESS SALES, INC. | ) |
| | ) Case No. 17-11037-EEB |
| | ) |
| EIN: 26-2964586 | ) |
| | ) |
| Debtor. | ) |

## DECLARATION OF BRIAN FIRKINS

I, Brian Firkins, Chief Executive Officer of Endless Sales, Inc., make this Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**Background**

1. The Debtor, Endless Sales, Inc. ("Debtor"), filed its voluntary petition pursuant to Chapter 11 of the Bankruptcy Code on February 13, 2017 ("Petition Date").

2. I am the Chief Executive Officer of the Debtor and am familiar with its operations and financial history.

3. The Debtor is a Colorado corporation based in Denver, Colorado. The Debtor is engaged in business in selling new and used forklifts, forklift parts and accessories, material handling equipment, and renting forklifts.

4. The Debtor operates out of its leased warehouse located at 4625 Colorado Blvd., Denver, Colorado, 80216 (the "Property"). The Debtor has expended significant funds in order to outfit the Property with a full paint and body shop, and equipment to complete repairs and battery reconditioning on their inventory and equipment.

5. The construction needed in order to bring the Property up to code and outfit the Property for the Debtor's needs took significantly longer than anticipated, and cost significantly more than anticipated.

6. The prolonged construction resulted in a significant decrease in sales, and resulted in the Debtor scaling back its equipment purchases in order to reallocate funds to the increased construction costs.

7. The Debtor also encountered legal problems stemming from the construction on the Property. After the general contractor improperly asserted a mechanic's lien against the

Property and filed suit against the Debtor, resulting in the Debtor expending significant legal fees in order to resolve issues related to the general contractor and the mechanic's lien.

8. From 2015-2016, the Debtor determined that several of its sub-contracted sales people were attempting to compete directly with the Debtor by opening their own company and using the Debtor's proprietary customer database in order to sell to customers on behalf of the Debtor's largest competition and their new company. These actions were taken in direct violation of the non-compete clauses included in the Debtor's sub-contractor agreements with the sales people. While the sales people were terminated, their actions resulted in the Debtor losing over $1.5 million in sales from 2015 to 2016.

9. As a result of these actions, the Debtor also restructured its sales department and hired a new sales team. While the Debtor's sales have begun to recover, the sales team is still only 50% of its prior size, limiting the Debtor's ability to reach its customers.

10. In March 2016, two of the employees who were terminated as a result of the violation of their sub-contractor agreements filed lawsuits against the Debtor, seeking over $300,000 combined in damages, and asserting claims for violation of the Colorado Minimum Wage Act and Wrongful Discharge.

11. The Debtor has expended significant amounts for legal fees in defending against the lawsuits and the aggressive litigation tactics employed by the plaintiff-employees. The plaintiff's attorney further indicated an intent to contact other terminated employees in order to bring similar lawsuits against the Debtor.

12. As a result of the financial strain on the ongoing litigation, as well as the detrimental impact of the litigation on the Debtor's business operations, the Debtor elected to file its Chapter 11 Bankruptcy Case in order to continue its operations and reorganize its business.

13. The Debtor's assets on the Petition Date consist of accounts receivable in the amount of $1,085,879.25, inventory in the amount of $1,204,580.89, vehicles in the amount of $158,325, furniture and fixtures in the amount of $3,500, and cash and cash equivalents in the amount of approximately $18,000.

14. Substantially all of the Debtor's assets are subject to a first position lien in favor of BBVA Compass Bank ("Compass"). The Debtor has three pre-petition loans with Compass Bank, in the combined amount of approximately $685,553.00. The loans from Compass were

duly perfected by the filing of UCC-1 Financing Statements with the Colorado Secretary of State.

15. The Debtor currently employs 30 people. The employees are a mixture of hourly, salary, and commissioned employees.

16. The Debtor pays its employees on a semi-monthly basis. The Debtor's has calculated the amount of its pre-petition payroll for the period extending through February 13, 2016. The unpaid gross payroll, including all taxes and applicable charges is approximately $17,118.70. In the event the employees are not paid on time, they will suffer personal hardships since they generally survive on their wages. The loss of the employees, if they quit their jobs, would have a detrimental impact on the Debtor's operations, as the employees are necessary to the ongoing success of the Debtor.

**Use of Cash Collateral**

17. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which Compass may have an interest.

18. The Budget attached to the Motion for Authority to Use Cash Collateral reflects a conservative analysis of the Debtor's income and expenses over the projected periods.

19. The majority of the Debtor's revenues and available cash comes from sales of its forklifts and services provided to customers. Without the use of cash collateral, the Debtor will have insufficient funding to continue its operations. Specifically, the Debtor will not be able to pay its employees, vendors, rent, and other costs associated with business operations.

20. The Debtor will be replacing the cash and cash equivalent in the course of its daily operations. Additionally, the value of the Debtor's business assets, specifically its fixtures and equipment, will remain stable. While the Debtor's income is projected to be negative during the budgeted time period, the Compass is oversecured by the value of the Debtor's assets, and therefore adequately protected.

**Payment of Pre-Petition Wages**

21. As of the Petition Date, the Debtor has 30 employees ("Employees"). In the ordinary course of business, the Employees are paid bi-weekly.

22. It is necessary for the Debtor to compensate the Employees in order to retain their continued and uninterrupted services, which is essential to the Debtor's continued operations.

23. As of the Petition Date, the Debtor owed its employees gross wages totaling

$17,118.70 ("Prepetition Wages").

24. I believe that any delay in paying Prepetition Wages will adversely affect the Debtor's relationship with its Employees, damage morale, and hinder cooperation.

25. The Employees are vital to the Debtor's operations. I am certain that if the Employees are not paid their Prepetition Wages, they will leave the company, severely impeding the Debtor's ongoing operations. No amount due to any employee exceeds the statutory priority claim amount for employee wage claims set forth in 11 U.S.C. § 507(a)(4)

The preceding statements are true and correct to the best of my knowledge and belief.

_____
Brian Firkins